1  Stephen G. Recordon (SBN 91401)
2  **Recordon & Recordon**
   225 Broadway, Suite 1900
3  San Diego, CA  92101
4  Phone: (619) 232-1717
   Facsimile: (619) 232-5325
5  Email: 1sgrecordon@gmail.com
6
7  Attorneys for Plaintiff
8
9              UNITED STATES DISTRICT COURT
10            SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| Christopher Alarcon | Case No.  15-cv-00992 LAB (KSC) |
| Plaintiff, | **Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment** |
| v. | |
| Vital Recovery Services, Inc and Galaxy Asset Purchasing, LLC, | |
| Defendants. | JUDGE: Hon. Larry A. Burns |

# TABLE OF CONTENTS

I.  Introduction ……………………………………………….. 1

II.  Statement of Facts …………………………………………… 1

III.  Argument …………………………………………….. 5

    A.  The debt Defendants collected in 2014 was
extinguished in 2010 …………………………………….. 5

    B.  Alarcon never released Defendants from liability
for their acts …………………………………………….. 13

    C.  Neither Defendant has established a defense
of *bona fide* error …………………………………….. 15

    D.  Plaintiff has suffered actual damages, although he
does not need to establish actual damages for standing ……… 21

    E.  Defendant Galaxy has not established they are not
a debt collector …………………………………….. 23

    F.  Defendants' Act violate the Rosenthal Act …………………… 24

    G.  Plaintiff's claims are not only brought in good
faith, but are clearly viable claims ……………………………25

# TABLE OF AUTHORITIES

*Alary Corp v Sims*
     283 B.R 549 (9th Cir BAP, March 20, 2002) …………………….….... 6, 9

*Anderson v Liberty Lobby, Inc*
     477 US 242 (1986) (*emphasis added*) …………………………………… 16

*Baker v. G. C. Servs. Corp.*
     677 F.2d 775 (9th Cir. 1982) ………………………………………… 21

*Casey v. Proctor*
     59 Cal.2d 97 (1963) ………………………………………………….. 14

*Clark v. Capital Credit & Collection Serv., Inc.*
     460 F.3d 1162 (9th Cir.2006) ………………………………………… 19

*Convertino v. US Dept of Justice*
     684 F 3d 93 (DC Cir, 2012) ……………………………………….... 16

*Fields v. Wilber Law Firm, P.C.*
     383 F.3d 562 (7th Cir. 2004) ………………………………………… 20

*Fox v. Citicorp Credit Servs, Inc.*
     15 F.3d 1507 (9th Cir.1994)) ………………………………………… 15

*Gonzales v Arrow Financial Services*
     *660 F 3d 1055 (9th Cir 2011)* ..………………………………………… 20

*Hardy v. America's Best Home Loans*
     232 Cal App 4th 794 ………………………………………………… 12

*Hahn v. Triumph Partnerships*
     *LLC*, 557 F 3d 755 …………………………………………………… 23

*Harvey v. United Adjusters*
     509 F Supp 1218 (D. Or, March 20, 1981) …………………….……….. 25

*Hollings v. Hollings,* 8 N.J.Super.
     552, 73 A.2d 755 (Ch.Div.1950) …………………………………….… 10

*McCray v. Casual Comer, Inc.*

      812 F.Supp. 1046 (C.D. Cal. 1992) ……………………………………… 14

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*

      637 F. 3d 939 (9th Cir 2011) ………………………………………..… 15, 19

*Nguyen v LVNV Funding, LLC*

      Case No. 15-cv-00758-LAB-RBB (Feb 6, 2018, SD. Cal) ……………… 12

*O'Neil v. General Security Corp.*

      4 Cal. App. 4th 587 (1992) ……………………………………... 7, 8

*Passanisi v. Merit-McBride Realtors, Inc.*

      *190 Cal.App.3d 1496 (1987)* …...……………………………………… 7

Reichert v National Credit Systems, Inc

      531 F 3d 1002 (9th Cir 2008) ……………………………………… 15, 19

*Robins v. Spokeo, Inc*

      867 F 3d 1108 (2017) ……………………………………………….. 23

*Sial v. Unifund CCR Partner*

      2008 WL 4079281, at *4 (S.D. Cal. Aug. 28, 2008) ………..…..…….. 24

*Tourgeman v. Collins Financial Services, Inc*

      755 F 3d 1109 (9th Cir 2014) ……………………………………… 20, 22

## I.      Introduction

In 2014, Defendants, both debt collectors, attempted to collect a debt from Plaintiff that was extinguished in 2010 when Plaintiff prevailed at trial against the actual original creditor who lent him money, Beneficial California, Inc.  Defendants' attempts to collect a debt that no longer existed violated the Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Act.

Defendants initially attempted to deny Plaintiff his day in court by falsely representing to this Court that Defendants were assignees of Beneficial California, Inc.  After the Ninth Circuit determined that Defendants failed to establish this fact, and this action has finally begun, Defendants are now attempting to attain a dismissal or summary judgment before Plaintiff obtains discovery.

Defendants argue that they are entitled to a dismissal of Plaintiff's Complaint, or alternatively judgment in their favor on all claims, on five bases: that Plaintiff still owed a debt despite a state court judgment in his favor regarding that same debt, that Plaintiff somehow released Defendants from liability for their 2014 acts when Plaintiff signed a release with another party in 2011, that Defendants have a complete defense to Plaintiff's claims based on *bona fide* error, that Plaintiff lacks standing as he purportedly suffered no damages, and that Defendant Galaxy is not a debt collector.  As shown below, all of Defendants' claimed bases for dismissal or summary judgment lack merit.

## II.     Statement of Facts

### *Chronology*

On or about April 29, 2006, Christopher Alarcon ("Alarcon" or "Plaintiff") entered into a written agreement ("Consumer Loan Agreement") with Beneficial California, Inc ("Beneficial") for a consumer loan in the amount of $14,304.69. *Declaration of Alarcon*, ¶¶4-5 and Ex 1. This Consumer Loan Agreement, and Alarcon's Beneficial account, were later associated with an account number ending in 0118 ("Account"). *Joint Statement of Undisputed Material Facts*, ¶2, docket no 24 and *Declaration of Alarcon*, ¶6

On July 15, 2009, Beneficial filed a complaint ("State Court Complaint") in the Superior Court of California for the County of San Diego against Alarcon, in the matter of *Beneficial California, Inc v Christopher Alarcon*, case number 37-2009-00094101-CL-CL-CTL ("State Court Action"), regarding the Consumer Loan Agreement. *Joint Statement of Undisputed Material Facts*, ¶4, docket no 24 and *Declaration of Alarcon*, ¶¶7-8 and Ex 2

While Beneficial did not identify the account number at issue in the State Court Complaint, on April 20, 2010, counsel for Beneficial filed a document entitled *Declaration of Plaintiff in Lieu of Personal Testimony at Trial[CCP §98]* in the State Court Action. *Declaration of Alarcon*, ¶¶9-11 and Ex 3.

As "Exhibit A" to the *Declaration of Plaintiff in Lieu of Personal Testimony at Trial [CCP §98]*, Beneficial filed a copy of the Consumer Loan Agreement, Truth in Lending disclosures, and Arbitration Rider, confirming that the Consumer Loan Agreement at issue in this case are the same as the State Court Action.

As "Exhibit B" to the *Declaration of Plaintiff in Lieu of Personal Testimony at Trial [CCP §98]*, Beneficial filed a copy of an "Account Payment History for Christopher Alarco" (*sic*) that referenced a number ending in 0118, with the initial account numbers redacted, indicating that the account at issue in the State Court Action was a Beneficial account with an account number ending in 0118, the same number earlier associated with the April 29, 2006 Consumer Loan Agreement, thus confirming that Beneficial's claims in the State Court Action were based on the Beneficial account number ending in 0118. *Joint Statement of Undisputed Material Facts*, ¶5, docket no 24 and *Declaration of Alarcon*, ¶12 and Ex 3.

On July 9, 2010, Beneficial prosecuted their claims to trial in the State Court Action against Alarcon, and lost.  On October 15, 2010, the Hon. Joan Lewis signed and entered judgment ("State Court Judgment") for Alarcon and against Beneficial in the State Court Action, and in doing so extinguished all of Beneficial's claims under the Consumer Loan Agreement. *Joint Statement of Undisputed Material Facts*, ¶¶6-7, docket no 24 and *Declaration of Alarcon*, ¶¶13-15 and Ex 4.

On or about 2012, a collection agency hired by Galaxy Asset Purchasing, LLC ("Galaxy") contacted Alarcon.  *Declaration of Alarcon*, ¶16.  This collection agency claimed that Alarcon owed money to Galaxy, based on his now-extinguished account with Beneficial.  *Id* at ¶17. Alarcon told the collection agency that he had a judgment in his favor regarding the Beneficial account, and he sent this agency a copy of the above State Court Judgment.  *Id* at ¶18.

About six months later, a second collection agency claiming to work for Galaxy sent Alarcon a letter regarding the same Beneficial account. *Id* at ¶19. Alarcon called this collection agency to tell them about the judgment in his favor, and sent this second agency a copy of the judgment. *Id* at ¶20.  Several months later, a third collection agency contacted Alarcon, trying to collect money for the same Beneficial account, again on behalf of Galaxy.  Alarcon told this third agency about the state court judgment in his favor, and that he did not owe any money to Galaxy or anyone else for the Beneficial account. *Id* at ¶¶21-21.

During this same period, Alarcon was contacted by another collection agency working for Galaxy, "Frontline Asset Strategies" ("Frontline").   Not only did Alarcon tell Frontline about the State Court Judgment, but he also sent their agent or employee "J Heuber" a copy of the State Court Judgment, by email, on June 10, 2013. *Id* at ¶¶23-25 and Ex 5.

Galaxy and the collection agencies they hired simply ignored the copies of the State Court Judgment that Alarcon sent and his repeated statements that he already won in court against Beneficial.  This process continued into 2014.  *Id* at ¶¶26-27. Shortly after August 1, 2014, Alarcon received a latter from "Vital Recovery Services, Inc," ("Vital") claiming that the Beneficial Account, with an original account number ending in 0118, was owned by Galaxy, and that he owed Galaxy the sum of $23,507.36, and demanding payment in that amount.  *Joint Statement of Undisputed Material Facts*, ¶¶8-10, docket no 24 and *Declaration of Alarcon*, ¶28.

/ / /

As noted above, the Beneficial account Alarcon was sued on had an account number ending in 0118, and this number also appears in the documents attached to Exhibit 3, Beneficial's *Declaration of Plaintiff in Lieu of Personal Testimony at Trial[CCP §98]*, in the State Court Action.  In other words, the letter from Vital was regarding the same Beneficial account that was already reduced to judgment *in Alarcon's favor*.  *Id* at ¶¶29-30.  Vital also called Alarcon on multiple occasions to collect this now extinguished debt.  *Id* at ¶31.

Alarcon could not make this continued harassment stop by himself, and so he hired an attorney to help him fend off these debt collectors.  *Id* at ¶32.  Alarcon incurred a debt for these services.  *Id* at ¶33.

**Galaxy Asset Purchasing**

Galaxy Asset Purchasing, LLC ("Galaxy") is a debt collector under both the Federal Fair Debt Collection Act ("FDCPA") and California's Rosenthal Act. See *Deposition of Heather Kochamba*, page 33, lines 11-25, page 34, lines 1-25, page 35, lines 1-25, and page 36, lines 1- 4).   This document is attached to the *Declaration of Clinton Rooney* as Exhibit A, and will be referred to hereafter as the *Deposition of Heather Kochamba*.

Galaxy does not engage in any kind of investigation of the accounts that they purchase on an individual basis, prior to purchasing those accounts. (*Id*, page 41, lines 5-14). Galaxy does not engage in a public record search to see if the accounts they are about to purchase have been reduced to judgment. (*Id* page 40, lines 6-11). Galaxy's investigation of the accounts they purchase, as a group, consists of simply relying upon representations and warranties of the seller of the accounts. (*Id*, page 41, lines 5-22). Prior to sending accounts out for collection, Galaxy does not engage in any sort of investigation or review of the accounts on an individual basis. (*Id*, page 42, lines 14-19)  Prior to sending out accounts for collection, Galaxy's "IT" department reconciles the "sale file" for the accounts they purchase, and the "sale, assumption and assignment agreement" to make sure that the account balances

match. (*Id*, page 43, lines 2-16).  Galaxy also sends the collection agency an Excel sheet with account balance and contact information for the consumer. (*Id*, page 45, lines 6-25, and page 46, lines 1-11).

In other words, Galaxy's efforts to investigate are solely focused on making sure that the account balance matches, and that the collection agency has a current address and telephone number so they can collect debts. Galaxy does not investigate whether the debts are actually owed, or if they have been reduced to judgment. Galaxy also engages in at least two types of "scrubs," in which Galaxy hires third parties to search public records for information regarding consumers. These two types of "scrubs" are "bankruptcy scrubs," and "deceased scrubs," in which vendors search public records for Galaxy to make sure that the consumers Galaxy seeks to collect from are not bankrupt or deceased. (*Id*, page 63, lines 5-24). When the need arises, Galaxy is also not averse to performing public records searches, or hiring third parties to do so. (*Id*, page 65, lines 12-17). Galaxy is capable of searching both records of death, and federal bankruptcy court records.

However, as to searching for judgments entered in favor of a California consumer, the story changes: *Galaxy claims that they have no access to California court records without the involvement of an attorney.* (*Id*, page 57, lines 8-10). Five minutes on the website of any California court would dispose of this notion. This is a good indication that Galaxy has no policy or procedure in place to make sure that the debts they purchase and collect have not been reduced to judgment: they do not even know whether they could access these public records.  Once the account has been placed for collection, Galaxy does not ask the collection agencies to do any sort of investigation or due diligence. (*Id,* page 61, lines 11-15).

## III.    Argument

## A.    The debt Defendants collected in 2014 was extinguished in 2010.

There is no dispute that the debt at issue, the same debt that Vital and Galaxy were attempting to collect in 2014, for an account number ending in 0118, was

reduced to judgment, in Plaintiff's favor in 2010.  See the parties *Joint Statement of Undisputed Material Facts*, ¶¶1-9, [Docket no 24].  The dispute is whether the judgment entered in Plaintiff's favor in 2010 extinguished the debt that Defendants continue to claim is due.

Defendants propose that the applicable standard is the "bar" standard set out in the Restatement of Judgments (Second).

Specifically, Restatement §17 provides that:

A valid and final personal judgment is conclusive between the parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment (see § 18);
(2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment bars a subsequent action on that claim…

Alarcon agrees that the Restatement sets out the proper standard.  The Ninth Circuit agrees as well:

Our claim preclusion decisions are consistent with the basic approach of the Restatement (Second). We, of course, apply Ninth Circuit precedent, which comports with the Restatement (Second).
*Alary Corp v Sims*, 283 B.R 549, 557 (9th Cir BAP, March 20, 2002)

Restatement §17 provides that if the plaintiff wins, that plaintiff's claim is extinguished, and that if defendant wins, *plaintiff's claim is also extinguished*.  In both cases, the result is the same: the claim is extinguished.

Defendants argue that Restatement §17 merely prohibits repeated lawsuits, and not debt collection, that the term "claim" used in Restatement §17 is somehow narrower than the term "debt" and does not include debts, that the doctrine of "bar" does not extinguish debts, while "merger" presumably does, and that the Restatement does not extinguish the debt at issue because the state court judgment in Plaintiff's favor was somehow procedural, and not "on the merits."

/ / /

1  These arguments range from merely wrong to profoundly misguided.

2  ***Restatement §17 extinguishes all of the claims at issue in the state court litigation,***

3  ***and does not merely prevent a second lawsuit.***

4  As noted above, Restatement §17 treats the underlying claims exactly the

5  same for merger and bar:  they are both extinguished.  In the case of merger, as there

6  is now a new obligation based on a judgment, the old obligation merges into the

7  new.  In the case of bar, as there is no new judgment obligation, the underlying

8  claim simply disappears, and this extinguishment operates as a bar to further

9  litigation.  In both cases, there is a two step process: the underlying claim is first

10  extinguished, and then based on that extinguishment, the new judgment acts as

11  merger or bar.  It is that first step, *extinguishment*, which is at issue here.

12  Defendants would like this Court to pretend only the second step occurs, and

13  ignore the extinguishment of their claims.  The clear language of Restatement §17

14  does not permit this slight of hand: the second step is based upon the first.

15  There is no principled way to distinguish between the "extinguishment of

16  claims" that occurs when the creditor wins a judgment, and when the putative debtor

17  prevails: the Restatement uses the exact same language, word for word.  If the

18  underlying claim would be extinguished if the creditor won, the claim is

19  extinguished if the debtor wins as well.

20  There is no real doubt that a California judgment extinguishes a claim of a

21  debt if the plaintiff wins, and the terms "debt" and "claim" are used interchangeably

22  in this context.

23  When an assessment lien is enforced through judicial action, **the debt
    secured by the lien is merged into the judgment.** The doctrine of
24  merger is an aspect of res judicata. (*Passanisi v. Merit-McBride
    Realtors, Inc. (1987) 190 Cal.App.3d 1496, 1510 [236 Cal. Rptr. 59].*)
25  "Under that aspect **a claim presented and reduced to judgment
    merges with the judgment and is thereby superseded.** [Citation.]
26  The claimant's remedy thereafter is to enforce the judgment; he may
27  not reassert the claim." (*emphasis added*)

28  *O'Neil v. General Security Corp.*  4 Cal. App. 4th 587, 601-602 (1992)

As the Restatement describes precisely the same process for extinguishment of claims for bar and merger, there is no reason to treat a debt extinguished under the doctrine of bar any differently than the *O'Neil* court treated the extinguishment of a debt under the doctrine of merger.

***The term "claim" is broader than the term "debt"***

Under the Restatement of Judgments (2d) §24, the term "claim" is defined, and given a very broad scope:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. Restatement of Judgments (2d) §24

This term includes not only debts, but all civil claims arising under contract, tort or in equity.  The notion that the term "debt" would somehow lie outside this sweeping definition is simply absurd.  The term "claim" includes *all* rights of the plaintiff to remedies, with respect to *all or any part of the transaction* out of which the action arose.  A debt is a right to payment.  That right arose in this case from a transaction, a specific contract.  Any right to payment arising from that contract is a "claim" under the definition above, as it is a right to a remedy, payment, arising from a transaction, in this case contract formation.  The debt claimed by Defendants is a "claim" under Restatement of Judgments §24, and was extinguished upon entry of judgment in state court under Restatement of Judgments §17.  This is not a complex issue, despite Defendants strenuous effort to muddy the waters.

This straightforward reading of Restatement of Judgments §24 is in concert with *O'Neil v. General Security Corp.*  4 Cal. App. 4th 587, 601-602 (1992), which used the term "debt" interchangeably with "claim," in the context of issue preclusion. This only makes sense" a "debt" is simply a type of claim, a claim of a right to payment, in this case based on a contract.

Defendants claim that the court in the *3dfx Interactive v nVidia Corp* "defined" the term "claim" more narrowly.  This is simply false: the *3dfx Interactive v nVidia Corp* laid out the Ninth Circuit's 'transactional nucleus" test that is used to determine whether a claim arose from a common transaction or series of transactions.  The court did not address Restatement of Judgments §17 at all, or whether claims are extinguished whether a second suit is filed or not.  Defendants here misrepresent the holding of this case.

The definition of "claim" is broader than the definition of a debt, and the term "debt" is simply a subset of the term "claim," as used in *O'Neil*.  Defendants have not cited a single case which holds that a "debt" somehow lies beyond the scope of the term "claim" as used in the Restatement.

**Bankruptcy cases are inapposite**

Defendants could not find any case law holding that a claim extinguished under Restatement §17 could still be pursued in collection, and so Defendants instead engage in a slight of hand, claiming that bankruptcy cases such as *Donaldson v. LVNV Funding, LLC, In re Dunaway, In re O'Connell, In re Montano, In re Vogt, In re Irby* and *Mahoney v. Washington Mutual* hold that debts discharged in bankruptcy are not extinguished.

This is completely irrelevant to the claims at issue here.  Alarcon does not claim that Beneficial California Inc's claim of a debt was discharged in bankruptcy; instead Beneficial California's claims were extinguished when the state court entered judgment in Alarcon's favor.  Furthermore, bankruptcy law uses the term "claim" in a manner different from that used in claim preclusion analysis, and decisional law regarding the one cannot be transposed upon the other.

> The term "claim" as used in "claim preclusion" analysis differs from the bankruptcy meaning of "claim," which is a statutorily defined term meaning a present or future right to payment on a legal or equitable theory.  *11 U.S.C. § 101(5)*.
> *Alary Corp v Sims*, 283 B.R 549, 556 (9th Cir BAP, March 20, 2002)

Beneficial California, Inc's claims against Alarcon were *extinguished* by the state court judgment, the same as they would have been had Beneficial won: in both cases, the underlying claim of a debt is extinguished, and no longer exists. This is different than a bankruptcy discharge. "Extinguised" and "discharged" are different terms, and this Court should not be misled by Defendants' attempts to conflate the two terms.

### *Virginia law is inapposite*

Defendants next claim that under *Wynne v. I.C. Sys., Inc.,* 124 F. Supp. 3d 734, 742 (E.D. Va. 2015), a Virginia federal case involving a Virginia judgment, that California judgments do not extinguish the debts at issue in the judgments rendered. The first issue with this argument is that the *Wynne* decision is bereft of any real analysis as to why a Virginia judgment would not extinguish the debt at issue there. The second issue is that *this decision has no bearing on California state law*. If California state law holds that a California judgment extinguishes the debt at issue, then the debt is extinguished, whether Virginia law holds otherwise or not.

### *Extinguishment of a claim is different than the statute of limitations*

Defendants next cite *Huertas v Galaxy Asset Management*, in which the Third Circuit found that Galaxy could pursue a time barred debt *because it was not extinguished*. The Court found that:

> ("When a procedural statute of limitations runs its course, only the remedy is barred, not the common law right."); *Hollings v. Hollings,* 8 N.J.Super. 552, 73 A.2d 755, 757 (Ch.Div.1950) (observing that a statute of limitations "is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor"), *aff'd,* 12 N.J.Super. 57, 78 A.2d 919 (App.Div.1951). **In other words, Huertas still owes the debt — it is not extinguished as a matter of law** — but he has a complete legal defense against having to pay it.
> *Huertas v Galaxy Asset Management*, 641 F 3d 28, 32 (*emphasis added*)

*Plaintiff agrees with the Third Circuit on this issue*: there *is* a difference between a debt that is extinguished, and a debt that merely can no longer be sued on.

1    *An extinguished debt is no longer owed*, while a time barred debt merely cannot be

2    sued on.  The Third Circuit got it right: it is Defendants who have misunderstood.

3    Defendants cite *Freyermuth v. Credit Bureau Services, Inc* for this same purpose,

4    and for the same reasons this holding is completely irrelevant to the doctrine of bar.

5    **Plaintiff does not claim that sending letters is always, per se, illegal**

6           Defendants next turn to *Mavilla v Absolute Collection Services, Inc*, an

7    unpublished Fourth Circuit case in which the court found that the plaintiff failed to

8    make a *prima facie* case, as they did not state which conduct violated the FDCPA.

9    It is in this context that the court stated that sending a letter is not, *per se*, illegal

10   under the FDCPA.  Here, Plaintiff has clearly stated a prima facie case that Vital

11   and Galaxy made a false claim that Plaintiff owed $23,507.36.  Plaintiff does not

12   claim that sending letters is *per se* illegal, he claims that pursing him for a debt that

13   has already been extinguished is unlawful, as this is both harassment and an false

14   claim as to the amount owed.  Regardless, *the case cited is unpublished and out of*

15   *circuit*, a sure sign of a weak position.

16   **The state court judgment at issue was "on the merits"**

17          Defendants next claim that the judgment at issue was not "on the merits" and

18   therefore the doctrine of bar does not apply here.  Defendants make this highly

19   counter intuitive claim on a single basis: the evidence presented at trial was

20   apparently documentary evidence, and there was no testimony by a live witness.

21          The *Restatement of Judgments (2d)* does not support this theory, so

22   Defendants decided to cite authority that has already been superseded, the *first*

23   *Restatement of Judgments*, which was superseded by the 2d Restatement of

24   Judgments decades ago.  Under the old Restatement of Judgment, under §§48-49, a

25   judgment must be "on the merits" for the doctrines of merger and bar to apply.

26          The first issue is that the Restatement of Judgments (2d) discarded this rule.

27   The second is that, in California, a judgment after trial is "on the merits" whether

28   the plaintiff decides to bring live witnesses or not.  A trial where the case is

dismissed with no offering of evidence is not on the merits as no evidence is weighed, and no findings are made:

> When a case is dismissed without evidence having been offered it is error to render judgment on the merits. There is nothing before the court on which to base any findings determinative of the issues. The absence of proof on either side could not involve a judicial determination of the merits of the controversy.
> *Hardy v America's Best Home Loans*, 232 Cal App 4th 794, 803

Here, there was no dismissal, and the Plaintiff offered evidence.  The fact that the Plaintiff in that action decided not to bother with a live witness does not mean no evidence was offered, weighed, or adjudicated, it merely means that the Plaintiff chose not to use oral testimony as evidence.  The Court weighed that evidence, found for Alarcon, and issued judgment.  The notion that a live witness is needed for an adjudication on the merits is flimsy and completely unsupported by any caselaw.[1]

As stated repeatedly above, under the same Restatement of Judgments §17 that Defendants urge on this Court, "If the judgment is in favor of the defendant, the claim is extinguished…" *An extinguished debt is no longer owed, under the very Third Circuit authority Defendants cite*.  Beneficial's claims of a debt were extinguished by the 2010 state court judgment in Alarcon's favor.  This issue is not actually that complex: under both the Restatement of Judgments, extinguished debts are no longer owed.

It is clear that collecting a debt that is not owed violates 15 USC 1692e(2), which prohibits misrepresentation as to the character, amount or legal status of a debt.  This is only the most obvious violation of the FDCPA: this behavior fits under a number of the acts prohibited by the FDCPA, such as 1692d, prohibiting behavior

---

[1] This Court found earlier this year in *Nguyen v LVNV Funding, LLC* that claim preclusion applied to a *default* judgment, even as to affirmative defenses that were never raised or adjudicated.  *Nguyen v LVNV Funding, LLC*, Case No. 15-cv-00758-LAB-RBB (Feb 6, 2018, SD. Cal)[Docket No. 112].  If a default judgment is an "adjudication on the merits" of an un-raised affirmative defense, then a judgment after a contested trial where evidence is offered is surely an adjudication on the merits.  Defendants' "Hail Mary" argument here falls well short of the end zone.

the natural consequence of which is to harass or oppress.  Defendants are not entitled to summary judgment on this issue, much less a dismissal under Rule 12(b).

**B.    Alarcon never released Defendants from liability for their acts**

Defendants argue that when Alarcon signed a release with Bishop & White in 2011, he somehow released both Defendants from liability for their future acts in 2014.  Defendants posit that in 2011, after judgment was entered, there was an affirmative duty to stop collecting a *still existing debt*, and that because Alarcon released Bishop & White, and arguably Beneficial, from liability for any past breach of this supposed duty, that this must also function as a release of future liability for Defendants' own future breaches of that duty, in 2014.   This is a feeble attempt to mislead the Court, as shown below.

*No debt left*

The first fatal flaw in this theory is that in 2011, there was no "affirmative duty" to "close down and cease collection on the loan account," because *there was no debt left to collect in the first place*.  When Beneficial lost at trial in 2010, their claim of a debt was extinguished under Restatement §17.   Beneficial's claims against Alarcon were extinguished when judgment was entered, and Alarcon's claims against Beneficial, if any, were released when he signed a general release with Bishop & White in 2011.  In 2011, no one had any more claims against anybody, and no one had any duty other than to refrain from violating the law: there was a "clean slate."  In 2014, three years later, when Defendants violated the FDCPA and the Rosenthal Act by making false claims that Alarcon still owed a debt, this new violation had nothing to do with a general release with other parties signed three years earlier.

*No release of liability for future acts*

Alarcon sued Bishop and White for their acts undertaken *before* judgment was entered (see Defendant's Req for Jud Notice, Ex 4) and then when Bishop & White signed a release with Alarcon, both parties released each other, and a list of

affiliated persons, from liability for acts taken up to that point.  Again, there was a "clean slate."  It is axiomatic that one cannot release another party from liability for *future* acts, particularly when one does not know who the parties are or what the acts will be.  In particular, California Civil Code §1542 provides that *even past acts* which are still unknown cannot be released unless the parties sign a §1542 waiver. *However, this release does not contain a §1542 waiver.*

Although settlement release agreements typically apply to all known and unknown claims, in California "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if know by him or her must have materially affected his or her settlement with the debtor.  California Civil Code §1542.   The intent of this statute is to prevent the person releasing claims from inadvertently waiving unknown claims merely by signing a general release.  *Casey v. Proctor* 59 Cal.2d 97 (1963)  Merely reciting that Civil Code section 1542 is waived, or that the releasing party intends to waive unknown claims, is not sufficient.  There must be independent evidence that the releasing party intended to release unknown claims. *McCray v. Casual Comer, Inc*. 812 F.Supp. 1046 (C.D. Cal. 1992).  However, the 2011 release contains no mention of §1542.

Even if there were a §1542 waiver, this would be of no help to Defendants here, as §1542 only covers *past or present* acts, whether known or unknown.

Regardless of §1542, the language of the Release itself at paragraph 3 only addresses past or present, and not future, acts:  "Alarcon hereby releases…..Bishop and each of their …clients…**whether past and/or present** from any and all claims, demands, causes of actions, debts, liabilities, rights, contracts, obligations, duties, damages, costs…or losses of any kind or nature whatsoever **that he possesses**, **whether at this time** known or unknown, direct or indirect…with respect to, in connection with, arising out of or relating to the Action."  There is no provision releasing anyone of *future* acts.  Defendants cannot take cover under a release of

claims against Bishop and White for acts committed before 2011, when Defendants committed their illegal acts in 2014.

### *No release of successors*

Even if all of the above were not the case, Alarcon only released "Bishop, and each and all of their directors, officers, members, partners, employees, servants, clients, attorneys, insurers, agents, and representatives, whether past and/or present…" from liability.  There is no release here of any successors, but only of the parties related to Bishop at the time of the release.

Even if there were a clause that somehow released successors in interest from liability for their future acts, *Defendants have never established they even purchased the supposed debt at issue.*  Defendants lack any chain of title reaching back to Beneficial California, Inc.  See *Kochamba Declaration*, Ex A-C.

### C.   Neither Defendant has established a defense of *bona fide* error

Defendants both claim that they are entitled to a complete defense under 15 USC 1692k of "*bona fide* error."

The Ninth Circuit holds that this defense is to be narrowly construed, and that the burden of proof lies with the party raising the defense.

> "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof."  *Reichert v National Credit Systems, Inc,  531 F 3d 1002, 1006 (9th Cir 2008)* (citing *Fox v. Citicorp Credit Servs, Inc.,* 15 F.3d 1507, 1514 (9th Cir.1994)). Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F. 3d 939, 948 (9th Cir 2011)

As noted in *McCollough*, the bona fide error defense has three elements: unintentional violation, bona fide error, and procedures reasonably adapted to avoid the error. *Id.*  Defendants cannot establish their burden as to these three elements. / / /

**Vital Recovery Services, LLC**

Vital Recovery Services, LLC ("Vital") claims to have a *bona fide* error defense.  As a 12(b) issue, all facts are presumed in Plaintiff's favor, and Plaintiff has already pleaded that Vital's acts were intentional, and that Vital did not maintain procedures reasonably adapted to avoid their violations of the FDCPA and the Rosenthal Act, precluding a 12(b) dismissal on this issue.  See Plaintiff's First Amended Complaint, ¶4.

Turning to the summary judgment standard, the first, and most salient issue here is that *discovery has not opened yet and Plaintiff has had no opportunity to conduct discovery on this issue*.  Under Federal Rule of Civil Procedure  56(d), on this issue, a Motion for Summary Judgment is premature.

> …summary judgment is premature unless all parties have "had a full opportunity to conduct discovery."
> *Convertino v US Dept of Justice* 684 F 3d 93, 99 (DC Cir, 2012)

> Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, **as long as the plaintiff has had a full opportunity to conduct discovery**.
> *Anderson v Liberty Lobby, Inc* 477 US 242 (1986) (*emphasis added*)

While this issue is clearly premature without the opportunity for Plaintiff to examine Vital, it is worth noting that the only evidence proffered by Vital is a declaration by Heather Kochamba, who does not even work for Vital, and bases her claims that Vital's acts were unintentional on nothing more than her unspecified "review of Vital's account records."  See *Kochamba Declaration*, ¶27.  **Kochamba does not even tell us what records she supposedly reviewed**.  This nonsense is the same tactic employed by Defendants in their arbitration motion, where Kochamba claimed that based on *Galaxy*'s records, Galaxy was the assignee of the account at issue.  Two years later, now that Galaxy has finally laid their cards on the table and

produced these supposed records, we see that Galaxy does not even possess a document naming, much less signed by, the original creditor, Beneficial California, Inc.  See *Kochamba Declaration*, Ex A-C.  Simply claiming that unspecified records are a basis for a legal conclusion is insufficient: Vital needs to state what the documents are, and show the documents.  Here, Vital does not even specify any document, much less produce the document, or even state its contents.

This complete and total lack of any supporting evidence for Vital's claims is clearly insufficient.  Even if we simply take everything Kochamba says at face value, though, and give Plaintiff no opportunity to conduct any discovery, Vital still has not met it burden.  Kochamba claims that Vital has the policies and procedures required because Galaxy has them and requires Vital to have them too.  As shown below, Galaxy does not actually have any policies or procedures aimed at avoiding the violation in question: Kochamba herself claimed in deposition that she did not even know if Galaxy was capable of conducting a public records search to see if there was already a judgment on the accounts they are trying to collect. (See *Deposition of Heather Kochamba*, page 57, lines 8-10).  As shown below, Galaxy lacks any policy or procedure to ensure that they are not collecting accounts that have already been reduced to judgment in the consumer's favor. If Galaxy has no procedures like this, and Vital's only claim is that they have what Galaxy requires, it is wildly unlikely that Vital actually conducts a public record search to ensure they are not collecting accounts that have been extinguished by a judgment.

**Galaxy**

Plaintiff has not yet had a full opportunity to conduct discovery as to Galaxy either.  In an earlier arbitration between Plaintiff and Galaxy, Plaintiff was allowed a limited scope, two hour telephonic deposition in which Ms. Kochamba purposefully refused to speak for long periods after each question before she answered each question in order to "run out the clock" and seemed to have significant memory lapses.  Nonetheless, Plaintiff does have partial discovery from Galaxy on their supposed policies and procedures, and Ms. Kochamba's testimony, while self-

serving, clearly indicates that Galaxy does not bother to maintain policies and procedures designed to avoid collecting debts that have been extinguished by a judgment in the consumer's favor.

**No procedures reasonably adapted to avoid the error**

Galaxy has no policy that would actually avoid collecting accounts that have already been reduced to a judgment in a consumer's favor, or were otherwise extinguished by a court.  Galaxy does not bother to search public court records to see if a judgment has been entered.

Galaxy does not engage in any inquiry at all regarding accounts before they purchase them, and does not engage in any individual inquiry of these accounts before they send them out for collection. (See *Deposition of Heather Kochamba*, page 40, lines 6-11, page 42, lines 14-19).

Instead, Galaxy claims they compare the "sale file" with the "sale, assumption and assignment agreement" to make sure the account balances match. (*Id*, page 43, lines 2-16). This would do nothing to flag an account that has been reduced to judgment, as there is no inquiry into whether judgment was entered, or a complaint filed: the only variable checked her is the claimed account balance.

Galaxy also claims to engage in "scrubs" which consist of hiring a third party to search public records. Galaxy hires third parties to search federal court bankruptcy records, and public records of death. (*Id*, page 63, lines 5-24).

Galaxy makes no effort to search public records to see of a judgment has been entered for or against a consumer on the accounts they collect though: Galaxy even claims they do not believe they are capable of obtaining these public records without the assistance of an attorney. (*Id*, page 57, lines 8-10).  Once the account has been placed for collection, Galaxy does not ask their collection agencies to do any sort of investigation or due diligence. (*Id*, page 61, lines 11-15).

Instead, Galaxy's "procedure" to avoid collecting debts extinguished by a judgment is to simply rely upon representations and warranties of the seller of the accounts. (*Id*, page 41, lines 5-22). Galaxy's "procedure" is to do nothing.

One major issue with Galaxy's claim that they are relying on the representations and warranties of the seller is that *the seller expressly disclaimed any warranty or representation regarding the accounts they sold*.

In Galaxy's own "Sale Assumption and Assignment Agreement," Fortis Capital IV, LLC, the "assignor" states at section 5.1(f) that:

> Assignor has no knowledge or information regarding the Purchased Assets, or the willingness or ability of Seller or any affiliate of Seller to perform its respective obligations under the Purchase Agreement that would adversely affect the rights being assigned to Assignee by Assignor hereunder. (See *Kochamba Declaration*, Ex B).
> So, Galaxy has no warranties or representations of Fortis they can rely on.

Setting this aside, the Ninth Circuit has also explicitly rejected this "procedure" as a valid basis for the bona fide error defense:

> JRL contends that its reliance on CACV's representation about a June 30, 2004, partial payment created a question of fact for the jury on its bona fide error defense. **However, the bona fide error defense "does not protect a debt collector whose reliance on a creditor's representation is unreasonable."** *Reichert,* 531 F.3d at 1006 (citing *Clark v. Capital Credit & Collection Serv., Inc.,* 460 F.3d 1162, 1177 (9th Cir.2006)). **Unwarranted reliance on a client is not a procedure to avoid error. Indeed, in** *Reichert,* **we held that "[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes."** *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F. 3d 939, 948-949 (9th Cir 2011)(*emphasis added*)

Here, Galaxy has no basis for reliance on any statement by Fortis *because Fortis appears to have made no statement about judgments*, and because Fortis explicitly disclaimed any knowledge at all regarding the account they sold.

Galaxy also claimed that they might react if a consumer brought a judgment to their attention. Alarcon actually sent a copy of the State Court Judgment to Galaxy's collection agencies.  See Declaration of Alarcon, ¶¶2-24 and Ex 5. But even if he had not, Galaxy cannot shift the burden to Alarcon: *Galaxy has the*

*burden so show procedures to avoid errors, and not to remedy them after the fact.*

Galaxy's' position is that Alarcon should have to contact them and prove to them that he does not owe the debt, and then *maybe* they will stop harassing him, calling him, lying to him and falsely claiming that he owes thousands of dollars that he in fact does not owe.

The Ninth Circuit has addressed this argument and has completely rejected it:

> Nelson & Kennard repeatedly suggests that a perplexed consumer could simply place a phone call to the debt collector to clear up any confusion. But for many consumers — particularly those who do not even recognize that they have encountered false information — making such a call likely would not be their first reaction to the letter, **nor does the FDCPA require that it be so**. As we have previously explained, **"consumers are under no obligation to seek explanation of confusing or misleading language in debt collection letters."** *Gonzales v Arrow Financial Services,* 660 F 3d 1055, 1062 (9th Cir 2011) (citing *Fields v. Wilber Law Firm, P.C*., 383 F.3d 562, 566 (7th Cir. 2004)). Indeed, **Nelson & Kennard's argument, taken to its furthest reach, would transform many of the FDCPA's substantive provisions into surplusage**, converting any dunning letter bearing a return address and phone number into a communication not misleading by virtue of those features. See *Fields*, 383 F.3d at 566 (noting that the Seventh Circuit has "rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call").
> *Tourgeman v. Collins Financial Services, Inc* 755 F 3d 1109, 1122 (9th Cir 2014) (*emphasis added*)

Galaxy cannot place the burden on Alarcon's shoulders: Galaxy is required to have their own procedures to prospectively avoid future errors, and expecting consumers to repeatedly alert Galaxy after the fact that they violated the FDCPA is not a procedure designed to avoid such errors.  After Alarcon repeatedly provided Galaxy with a copy of the State Court Judgment, what other steps was he required to take before Galaxy decided to leave him alone?

1
2
3
4
5
6

As shown above, Galaxy does not bother to check to see if the consumers they harass have a judgment in their favor, and do not stop collecting until they are sued.  As to Vital, Vital's only claim is that Galaxy makes them follow Galaxy's policies, which are clearly inadequate.  Regardless, as to Vital, no discovery has occurred at all on this issue as discovery has not yet opened, and any summary judgment on this issue is premature.

7
8

**D.     Plaintiff has suffered actual damages, although he does not need to establish actual damages for standing**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendants claim that "it is hard to imagine" how Plaintiff could be harmed by Defendants attempts to shake Plaintiff down for approximately $23,507.36 on a debt that he does not owe, years after he already went to trial and won on the same claim.  Not so.  Galaxy repeatedly sent collectors after Plaintiff, despite the fact that he owed them nothing.  Receiving yet another claim that Plaintiff owed over $20,000, despite the fact that Plaintiff had already repeatedly told Galaxy's collectors about the judgment in his favor, would lead any normal person to experience stress, fear, anger and frustration, all recoverable as actual damages under both the FDCPA and the Rosenthal Act.  Defendants also forgot to mention that Vital repeatedly called Alarcon as well, despite knowing that judgment had been entered in Alarcon's favor.[2]  Defendants' repeated unlawful acts also drove Alarcon to hire an attorney and incur a debt to that attorney, causing pecuniary damages.[3]  Defendants' invasion of Plaintiff's privacy, and the implicit threat of continued debt collection activities until and unless Plaintiff gives in and pays money he does not owe is not trivial.

24
25
26
27

These actual damages are not necessary for Plaintiff to prevail, however, as the FDCPA is a strict liability statute:  *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982) ("statutory damages are available without proof of actual damages"), and:

28

---
[2] *Declaration of Alarcon*, ¶31
[3] *Id* at ¶32-33

1

2   The FDCPA "comprehensively regulates the conduct of debt
    collectors," and "is a strict liability statute."
3   *Tourgeman v. Collins Financial Services, Inc* 755 F 3d 1109, 1119 (9th
    Cir 2014)
4

5   Even in cases based on the sending of a letter, where the consumer did not

6   even see the letters until months later because they were sent to his parent's address,

7   suffered no pecuniary loss, emotional distress or other actual damages, and was not

8   misled, the debt collector was *still* liable for their acts. It is the bad act that leads to

9   liability, with no requirement of actual damages.

10      The alleged violation of Tourgeman's statutory rights stems solely from
        the defendants' having mailed to him their collection letters, and that
11      injury would be redressed by an award of statutory damages, which the
        FDCPA makes available to prevailing consumers.
12      *Tourgeman v. Collins Financial Services, Inc* 755 F 3d 1109, 1116 (9th
        Cir 2014)
13

14

15      Defendants point to *Spokeo v Robins* in the hope that the Court will somehow

16  reflexively decide that Plaintiff's right to be free from invasion of privacy, from

17  harassment and from being the subject of debt collection efforts on a non-existent

18  debt are somehow not "concrete" under *Spokeo*.

19      Under *Spokeo, Inc v Robins*, there is no requirement for a showing of actual

20  damages in order to meet the lower standard of "concrete harm."

21      A plaintiff seeking to vindicate a statutorily created private right need
        not allege actual harm beyond the invasion of that private right.
22      *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1553 (2016)
        But the concrete-harm requirement does not apply as rigorously when a
23      private plaintiff seeks to vindicate his own private rights.  Our
        contemporary decisions have not required a plaintiff to assert an actual
24      injury beyond the violation of his personal legal rights to satisfy the
        "injury-in-fact" requirement.
25      *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1552 (2016)

26

27

28

The "concrete injury" standard under Spokeo is an easy standard to meet: when *Spokeo* was remanded to the Ninth Circuit, the Ninth Circuit found that the production of an "materially inaccurate" credit report was sufficient, with no need to show any further injury.  *Robins v Spokeo, Inc*, 867 F 3d 1108, 1118 (2017).

Here, Defendants made a material misrepresentation to Plaintiff that he owed over $20,000.00 that he in fact did not owe, and had already told Galaxy's agents that he did not owe.

The Seventh Circuit, in *Hahn v Triumph Partnerships, LLC*, 557 F 3d 755, noted that "Applying an incorrect *rate* of interest would lead to a real injury…." *Hahn* at 757.[4]  If overstating a rate of interest leads to a real injury, how much more injurious is a wholly false claim of a debt of $23,507.36?  While *Hahn* laid out the standard for a material violation of the FDCPA, if an injury is "real" under *Hahn*, it is surely "concrete" under *Spokeo*.

Here, Plaintiff's injuries are not just "real" and "concrete," they rise to "actual" damages and surpass the "concrete damages" standard laid out in *Spokeo*.

**E.    Defendant Galaxy has not established they are not a debt collector FDCPA**

The FDCPA definition of a debt collector includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."  15 USC 1692a(6)

Plaintiff alleged in ¶12 of his Complaint that Galaxy's principal purpose is the collection of debts, precluding a 12(b) dismissal on this issue.

As to Galaxy's Motion for Summary Judgment, Galaxy has not defined what their principal purpose is, and discovery has not yet opened in this action.  We do know that Galaxy claims to send out accounts receivable for collection, and then claims to spend significant resources auditing and supervising those collection efforts.  *Kochamba Declaration* §19.  We know that Galaxy actually has access to

---

[4] The Ninth Circuit adopted this standard in *Donohue v Quick Collect, Inc* 592 F 3d 1027 (9th Cir 2011)

the account management systems of the collectors it hires, and so is intimately involved in the collections process *Id* at ¶20.  We know that Galaxy exercises significant control over each aspect of the collection process, and requires feedback on the collections process to ensure Galaxy's continued control over the details of collection. *Id* at ¶¶20-21.  Ms. Kochamba claims to maintain "real-time, electronic access to Vital's collection management system" and receives "education and training on Vital's collection management system and how to view and retrieve Vital's collection records." *Id* at ¶22.  Galaxy claims to require elaborate procedures of its collectors, and Ms. Kochamba is intimately involved in directing and overseeing this process.  *Id* at ¶23.  Galaxy also trains employees on debt collection procedures to avoid violations of the FDCPA and the Rosenthal Act. *Id* at ¶25.

We do not know with certainty what Galaxy's "principal purpose" is, but it certainly seems clear that all of Galaxy's activities involve training and overseeing collectors, and that Galaxy is intimately involved in day to day collection activities and management.  There is at a bare minimum a triable issue of fact on this issue.

### Rosenthal Act

The Rosenthal Act has a broader definition of "debt collector" which encompasses creditors who "regularly" engage in debt collection on their own behalf.  Here, Galaxy's long term, complex efforts to train, supervise and monitor collection efforts taken on their behalf facially meets this standard.  Summary judgment on this issue is not yet appropriate.

## F.   Defendants' Act violate the Rosenthal Act

As noted by Defendants, "The RFDCPA establishes liability under *California law* for violations of the FDCPA." *Sial v. Unifund CCR Partner,* 2008 WL 4079281, at *4 (S.D. Cal. Aug. 28, 2008).  Other than slightly different definitions of "debt collector" and "debt," liability under one statute largely means liability under the other.  As shown above, Defendants' false representations that an extinguished debt is still owed violate the FDCPA, and by extension, the Rosenthal Act as well.

**G.     Plaintiff's claims are not only brought in good faith, but are clearly viable claims**

Defendants claim that after Galaxy repeatedly harassed Alarcon, sending collector after collector to pound him into submission, that Alarcon should have sued all of the collectors together as this would be convenient for Galaxy.

Indeed, this would have been wonderfully convenient for Galaxy, as this would have reduced the statutory damages claims against Galaxy to one third of their value, by combining three claims into one, because an FDCPA plaintiff can only recover statutory damages once against a given defendant in a single action.

In any one action, the statutory damage award may not exceed $1,000. *Harvey v. United Adjusters*, 509 F Supp 1218, 1222 (D. Or, March 20, 1981).

Setting up Alarcon's claims in this way would arguably be malpractice, and Alarcon's counsel is not required to commit malpractice in order to avoid inconveniencing Galaxy.

Alarcon does not have to sue separate collectors, who assailed him at different times, in the same suit. Repeated bad acts are not excused based on their similarity, and there is nothing untoward about bringing separate claims for each separate time that Galaxy sent out collectors to hound Plaintiff into submission.

Plaintiff's 2011 FDCPA claims had nothing to do with Galaxy either: indeed, if there is a pattern here, it is a pattern of repeated abuse by collectors determined to collect a debt that is not owed.

As shown above, *Plaintiff does not owe any amount to Galaxy*. The notion that Plaintiff's exercise of his statutory rights under the FDCPA is somehow bad faith because Galaxy themselves could not seem to quit lying to Alarcon and harassing him is ludicrous.  If anything, Galaxy's repeated behavior simply shows that their claims are knowing and intentional, and that Galaxy's real policies and procedures are not to avoid violations of the FDCPA, but instead to continue collections until the consumer pays money to do not owe, or sues Galaxy.

1

2      Date: September 6, 2018                    /s/ Stephen G. Recordon

3                                                 STEPHEN G. RECORDON
                                                  Attorney for Plaintiff
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28